IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| RIVERSIDE PARK ENTERPRISES, INC, a Massachusetts corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTAMIN, LTD., a Maryland Corporation, INTARIDE LLC, a Maryland Limited Liability Company, and INTARIDE INTERNATIONAL, INC. a Maryland Corporation,<br><br>Defendants. | No. 04-30142-KPN<br><br>**COMPLAINT AND JURY DEMAND**<br><br>FILING FEE PAID:<br>RECEIPT # 305686<br>AMOUNT $ 150.00<br>BY DPTY CLK MEA<br>DATE 8/4/04 |

Plaintiff, Riverside Park Enterprises, Inc., ("Riverside Park") brings this action against Defendants Intamin, Ltd. ("Intamin"), Intaride LLC, ("Intaride"), and Intaride International, Inc., ("Intaride International") (collectively "Defendants"), and as its Complaint, states and alleges as follows:

1. Riverside Park Enterprises, Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and is registered to do business in the Commonwealth of Massachusetts. Its principal place of business is in Agawam, Hampden County, Massachusetts. Riverside Park is an indirect subsidiary of Six Flags, Inc., and owns and operates a family-oriented theme park in Agawam known as Riverside Park.

2. Intamin, Ltd. is a corporation existing under the laws of the State of Maryland. Its principal place of business is in Millersville, Maryland. Upon information and belief, Intamin is either directly or indirectly wholly owned and/or controlled by Intaride LLC

372773

and/or Intaride International, Inc., and/or Sandor Kernacs, an individual residing in Maryland.

3. Intaride LLC, upon information and belief, is a Maryland Limited Liability company organized under the laws of the State of Maryland and is owned and/or controlled by Intaride International, Inc., and/or Sandor Kernacs. Intaride's principal place of business is in Glen Burnie Maryland.

4. Intaride International, Inc., upon information and belief, is a holding corporation existing under the laws of the State of Maryland and is owned and/or controlled by Sandor Kernacs. Intaride International, Inc.'s principal place of business is also in Glen Burnie, Maryland.

5. Intamin, Intaride, and Intaride International together engage in the design, manufacture, construction and sale of roller coasters for entertainment parks. Intamin, Intaride, and Intaride International have operated and performed interchangeably with respect to the matters at issue in this action and without regard to their corporate form, and, as such, are "alter ego" corporations of one another, and as such, are liable for the acts of the other.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

372773

3

7. This Court has personal jurisdiction over the Defendants because they engaged in substantial and not isolated contacts with the State of Massachusetts and within this district in connection with the agreement and activities at issue. In addition, Intamin, at a minimum, has expressly consented to jurisdiction and venue in this forum by contract.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and a substantial part of the property that is the subject of the action is situated here.

## COUNT I

### BREACH OF CONTRACT AND EXPRESS WARRANTY

9. Riverside Park incorporates the allegations contained in 1 through 8 above as if fully set forth herein.

10. On or about July 15, 1999, Riverside Park and Intamin entered into a written agreement (the "Agreement") pursuant to which Intamin agreed to design, produce, transport and install a custom roller coaster at Riverside Park's Agawam location for a scheduled opening of May 15, 2000 (the "Ride").

11. Under the terms of the Agreement, Intamin agreed, inter alia:

(a) that it would cause to be manufactured in accordance with the plan documents and deliver to Riverside Park all the items of machinery, equipment and parts necessary to construct to completion the Ride to a fully operational status, to provide all design and engineering services necessary for the development, construction and operation of the Ride, and to erect and install the ride;

(b) to expressly warrant that the Ride would (1) be fit and safe for its intended commercial use, (2) comply with all applicable laws, codes and insurance requirements, and (3) meet the technical data and other requirements contained in the Agreement;

372773

    (c) to expressly warrant that the design, documents, workmanship, factory construction, equipment, materials and component parts of the Ride would contain no defects, omissions or flaws of any kind which would prevent or interfere with the safe uninterrupted operation of the Ride for its intended commercial use, or would prevent the Ride from meeting applicable codes or laws, or from meeting the technical data or other requirement contained in the Agreement; and

    (d) that during the specified Warranty Period under the Agreement, in the event any of the Equipment, Documents, design or workmanship of the Ride was found to be defective or failed to meet the requirements contained in the Agreement, it would, at its sole cost and expense, repair the Ride or provide replacement equipment and/or documents to Riverside Park and correct any such defect in, or failure of, the Ride.

12.    The Agreement further provided that Intamin would be solely responsible for any claims, demands, suits, costs, damages or expenses arising out of or relating to its acts or omissions or those of its employees, servants or agents, and agreed to defend and indemnify Riverside Park against all claims, suits, actions, assessments or liabilities of any kind arising out of any breach of representation, warranty or covenant of Intamin made in the Agreement, or any default by Intamin under the Agreement, including, without limitation, from defective design, engineering, construction or manufacture of the Ride.

13. On information and belief, Intaride performed a substantial portion of the work on behalf of Intaride under the Agreement.

14.    On or about August 6, 2001, an accident occurred involving the collision of two roller coasters manufactured by Intamin and Intaride pursuant to the terms of the Agreement (the "Accident"), out of which various claims and potential claims have arisen, including claims by third parties, and out of which Riverside Park suffered damages including but not limited to physical property damage and interruption of its park and business operations, resulting in financial losses to Riverside Park.

372773

15. Intamin and its commonly controlled affiliates, Intaride and Intaride International, have breached the Agreement with Riverside Park by committing the following acts, each of which constitutes a separate and distinct material breach of the Agreement:

   (a) refusing to perform work required by the Agreement;

   (b) refusing to indemnify or reimburse Riverside Park for amounts paid by Riverside Park to repair property damage and/or suffered by Riverside Park in connection with the Accident.

16. By virtue of Defendants' breaches of the Agreement, Riverside Park has been damaged in an amount which is at present undetermined but is in excess of the jurisdictional amount of this Court and is estimated to exceed $3.5 million dollars.

17. Riverside Park is entitled to damages against the Defendants for all of these amounts, together with its costs, attorneys' fees, and pre and post-judgment interest.

## COUNT II

### Breach of Implied Warranty of Merchantability

18. Riverside Park incorporates the allegations contained in 1 through 17 above as if fully set forth herein.

19. Defendants impliedly warranted to Riverside Park that, among other things, the Ride it would manufacture for Riverside Park would:

   a. Pass without objection in the trade under the contract description;

   b. Be fit for the ordinary purpose for which the Ride is used; and

   c. Conform with all applicable health and safety regulations.

20. Defendants expressly warranted and held themselves out as having specialized expertise in these matters.

372773

21. In purchasing the Ride from Defendants, Riverside Park relied upon Defendants' expertise to exercise their judgment and care in designing, manufacturing, erecting and completing the Ride.

22. Defendants were aware that Riverside Park was relying upon Defendants to comply with their implied warranties of merchantability by exercising their judgment and care with respect to designing, manufacturing, erecting, completing and testing the Ride.

23. By failing to deliver a Ride fit for its ordinary purpose and resulting in the Accident, Defendants breached said implied warranty of merchantability.

24. As a direct and proximate result, Riverside Park has sustained injury and damages in an amount in excess of $3.5 million.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

25. Riverside Park incorporates the allegations contained in 1 through 24 above as if fully set forth herein.

26. Defendants impliedly warranted that the Ride was fit for its intended purpose, and that it obviously would not collide or cause injury or damage property or others in its operation.

27. Defendants breached this implied warranty of fitness for a particular purpose, causing injury and damages to Riverside Park in an amount in excess of $3.5 million.

372773

## COUNT IV

## NEGLIGENCE

28. Riverside Park incorporates the allegations contained in 1 through 27 as if fully set forth herein.

29. Defendants had a duty to Riverside Park to use reasonable care in the design, manufacture and construction of the Ride.

30. Defendants breached this duty of care to Riverside Park and were otherwise careless and negligent in failing to design, manufacture and construct the Ride in such as way as to prevent its operation in such a manner resulting in the Accident that occurred.

31. As a direct and proximate result of Defendants' negligence, Riverside Park has sustained injury and damages in excess of $3.5 million.

## COUNT V

## FOR INDEMNIFICATION

32. Riverside Park repeats and realleges paragraphs 1 through 31 above as if set forth fully herein.

33. As set forth above, under the terms of the Agreement, Intamin is obligated to defend and indemnify Riverside Park against any and all losses, claims, suits, actions, penalties, judgments, assessments, or liabilities of any kind including, without limitation, reasonable fees and costs of attorneys arising out of any breach by Intamin of the Agreement or in connection with any demand, claim or threatened claim against Riverside Park by a third party.

372773

34. Defendants are also obligated to defend and indemnify Riverside Park as a matter of law.

35. To date, Riverside Park has expended substantial sums addressing payment of claims asserted by third parties as a result of the Accident. While Intamin and Intaride have addressed some of these claims, Intamin is obligated to defend and indemnify Riverside Park against all of these claims, and to pay the attorneys' fees and expenses both in defending against any such claims and in enforcing this right to indemnification. Riverside Park is entitled to judgment against Intamin for any amounts paid by Riverside Park in either defending against and/or paying such third party claims in connection with the Agreement.

36. Riverside Park demanded indemnification from Defendants but to date, Defendants have only complied with their indemnification obligations to a limited extent.

WHEREFORE, Plaintiff, Riverside Park, requests that this Court find in its favor and against the defendants on each of the Counts above, awarding Riverside Park damages against Intamin Ltd., Intaride LLC, and Intaride International, Inc., jointly and severally, for those losses and amounts incurred by Riverside Park, including, but not limited to such consequential, direct, indirect, liquidated, and other damages in an amount to be determined more fully at trial, together with costs, attorneys' fees, pre and post-judgment interest, together with such other relief as to the Court may seem just, proper and equitable.

372773

## JURY DEMAND

Plaintiff hereby demands a jury trial of all issues triable to a jury.

Dated: August 4, 2004.

                              ROBINSON DONOVAN, P.C.

                              By: _____
                              Jeffrey L. McCormick, Esq.
                                (BBO # 329740)
                              John C. Sikorski, Esq.
                                (BBO # 461970)
                              Robinson Donovan, P.C.
                              1500 Main Street, Suite 1600
                              P.O. Box 15609
                              Springfield, MA 01115-5609
                              413.732.2301 (p)
                              413.785.4658 (f)

                              ATTORNEYS FOR PLAINTIFFS

Of Counsel:
FAEGRE & BENSON LLP
Terri L. Combs
801 Grand Ave.
31st Floor
Des Moines, IA 50309
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

DSMS1:40051441.01

372773